FILED
Clerk
District Court

MAR 5 0 1987

For The Northern Mariana Islands
By _____
(Deputy Clerk)

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

NORMA MARFEGA,                      )
                                    )
        Plaintiff-Appellant,        )       DCA 85-9023
        and Appellee,               )
                                    )
    vs.                             )
                                    )
LEE CHANG SOO, et al.,              )       OPINION
                                    )
        Defendants-Appellees.       )
_____)

BEFORE:  DUENAS, LAURETA, and MARSHALL,[*] District Judges

DUENAS, District Judge

_____

[*]The Honorable Consuelo B. Marshall, Judge, United States District Court, Central District of California, sitting by designation.

1032

COUNSEL OF RECORD:

For Plaintiff-Appellant/Appellee

LAW OFFICES OF
RANDALL T. FENNELL
P. O. Box 49
Saipan, CM  96950
BY: RANDALL T. FENNELL, Esq.

For Defendant-Appellee Soo
    and Seoul Night Club

BORJA AND SALAS
Attorneys at Law
P. O. Box 1309
Saipan, CM  96950
BY:  JESUS C. BORJA, Esq.

For Commonwealth Ports Auth:

White, Novo-Gradac and Thompson
A Professional Corporation
Attorneys at Law
P. O Box 222, Capitol Hill
Saipan, Mariana Islands  96950
BY: R. BREWSTER THOMPSON, Esq.

For Rep. of Nauru Airlines

KEOGH and BUTLER
Attorneys at Law
Suite 105
C & A Profssional Bldg.
Agana, Guam  96910
BY:  KENNETH GOVENDO, Esq.

--------

## STATEMENT OF FACTS

Plaintiff, Norma Marfega, is a Filipina who was hired by Defendant Seoul Restaurant & Bar Corporation to act as a waitress. Upon Plaintiff's arrival in Saipan, she discovered that she was also to act as a "bar girl" soliciting drinks from customers. Her employer forced her to live in small, cramped barracks and she was not permitted to leave the premises unaccompanied. She was not paid minimum wage.

Plaintiff attempted to escape from the club, but the owner, Lee Chang Soo, found out and forcibly without notice took her to the Saipan airport to be sent back to the Philippines. Plaintiff actively resisted being forced on the airplane and airport security guards and airline personnel forcibly carried her to the plane and physically forced her on board the Air Nauru flight to Manila (hereinafter referred to as "airport incident"). Plaintiff was not under any deportation order. Plaintiff subsequently returned and is now residing in Saipan.

## PROCEDURAL HISTORY

Plaintiff filed her complaint against Lee Chang Soo, Seoul Restaurant & Bar Corporation, Commonwealth Port Authority, (hereinafter "CPA"), Republic of Nauru, and John Does I-VI, on May 7, 1984.

The first cause of action is against Defendants Lee Chang Soo, Seoul Restaurant & Bar Corporation and John Does

IV, V, VI to recover unpaid minimum wages, unpaid overtime wages and liquidated damages.

The second cause of action is against Defendants Lee Chang Soo, John Does IV, V, VI, and Seoul Restaurant & Bar Corporation alleging involuntary servitude and seeking damages in the amount of $1,000,000.

The third cause of action is against Defendants Lee Chang Soo, Seoul Restaurant & Bar Corporation, Republic of Nauru, John Does I-VI, and the Commonwealth Port Authority alleging false imprisonment and seeking general damages in the amount of $500,000 and punitive damages in the amount of $1,000,000.

The fourth cause of action is against Defendants Lee Chang Soo, John Does I-VI and Commonwealth Port Authority alleging assault and battery and seeking general damages from each Defendant in the amount of $1,000,000 and punitive damages from each Defendant in the amount of $500,000.

The fifth cause of action is against all Defendants and alleges civil rights violations and seeks general damages in the amount of $500,000 from each Defendant and punitive damages in the amount of $1,000,000 from each Defendant.

The sixth and final cause of action is against all Defendants and alleges negligent or intentional infliction of emotional distress in the amount of $500,000 each.

On March 11, 1985, Defendant CPA filed a Motion for Summary Judgment alleging that CPA was protected from suit by

1035

governmental immunity and requesting that judgment for CPA be entered for false imprisonment and assault and battery. This part of the Summary Judgment motion was denied.

The Commonwealth Port Authority requested a jury trial and it was held on July 12, 1985. The jury returned the following verdict on July 19, 1985:

1. Defendants Soo and Seoul Restaurant & Bar Corporation not liable for false imprisonment;

2. Defendants Soo and Seoul Restaurant & Bar Corporation liable for unpaid overtime wages in the amount of $1,798.

3. Defendants Soo and Seoul Restaurant & Bar not liable for infliction of emotional distress;

4. Defendants Soo and Seoul Restaurant & Bar liable for violation of Plaintiff's privacy in the amount of $500 compensatory damage, and $250 each as punitive damages;

5. Defendants Commonwealth Ports Authority, Air Nauru, and Soo liable for the "airport incident" in the amount of $3,000 compensatory damage.[1] Seoul Restaurant & Bar was found not liable for the "airport incident." No defendant was found to be liable for punitive damages for the "airport incident."

Judgment was entered in accordance with the verdict on July 22, 1985, including liquidated damages in an equal amount

as the overtime wages--$1,798. The Plaintiff was also "awarded costs of suit against all defendants and pursuant to 4 CMC § 9244(b) reasonable attorney fees against defendants Lee Chang Soo and Seoul Restaurant & Bar for the judgment rendered" against them for overtime wages.

On July 30, 1985, Plaintiff moved for a new trial based on the following grounds:

    1) that there was non-disclosure by at least one juror of certain prejudicial information;

    2) that the verdict was contrary to the weight of the evidence; and

    3) that the award for overtime hours and violation of privacy was grossly inadequate.

On August 1, 1985, Plaintiff submitted her bill of costs and request for attorney's fees, seeking a total of $3493.94 as costs, and $22,738 as attorney's fees. All defendants opposed and objected to Plaintiff's bill of costs and request for attorney's fees.

The court orally denied the motion for a new trial on September 25, 1985, and issued its order on September 26, 1985.

A hearing was held on the issues of costs and attorney's fees, and the court issued its order on September 26, 1985, allowing the following:

    1) the sum of $281 as costs against Defendant

1037

Commonwealth Port Authority;

2) the sum of $284 as costs against Defendant Air Nauru;

3) the sum of $1,314 as costs against Defendant Soo and Seoul Restaurant & Bar; this latter amount was calculated as follows:

$    20.00 - Filing fee
     95.00 - Witness fees (depositions)
     55.00 - Translation expense
    301.00 - Deposition expense
    142.75 - Deposition expense
     74.75 - Deposition expense
    403.00 - Deposition expense
     15.00 - Translation expense
     10.00 - Witness fee
     10.00 - Witness fee
    187.50 - Translation expense
$1,314.00 - Total Expense

4) the sum of $765 for travel to Philippines and return to Saipan and the sum of $770.51 for hotel expenses for three days and three nights in the Philippines;

5) the sum of $4,400 (40 hrs. at $110 per hour) awarded to Plaintiff for attorney's fees against Defendants Soo and Seoul Restaurant & Bar for the wage claim issue.

1038

The Plaintiff, Defendants Lee Chang Soo and Seoul Restaurant & Bar, and Defendant CPA filed timely notices of appeal.

## ISSUES

The Plaintiff raises the following issues on appeal:

1) Did the trial court properly deny Plaintiff's motion for a new trial, which motion was based on an alleged abuse of discretion during the jury selection process?

2) Did the trial court abuse its discretion by granting attorney's fees to plaintiff in a reduced amount?

The Defendants Soo and Seoul Restaurant & Bar Corporation raise the following issues on appeal:

1) Did the trial court err in allowing certain costs of depositions when those depositions were never used at trial by Plaintiff and those deponents were never called to testify?

2) Did the trial court err by allowing certain costs for travel and hotel expenses, especially when no detailed accounting was provided by Plaintiff?

3) Did the trial court err by allowing certain costs of depositions only as to Defendants Soo and Seoul Restaurant & Bar Corporation?

4) Did the trial court err by awarding Plaintiff

attorney's fees when Plaintiff failed to provide the court with a breakdown of the reasonable number of hours worked on the overtime wage claim?

Defendant CPA raises the following issue on appeal:

1) Did the trial court err by denying summary judgment on the grounds that CPA is not immune from suit?

ANALYSIS

I. CPA does not enjoy governmental immunity.

Defendant-Appellant CPA argues that it is immune from suit on the following grounds:

1) that it is a part of the CNMI government with public functions (§ 2121);

2) that as a part of the government it is immune from suit pursuant to Sections 2204(a) and (b); and

3) that since the CPA does not have an insurance policy it is therefore immune from liability under Section 2133(c).

Section 2121 of 2 CMC establishes the Commonwealth Port Authority and reads as follows:

"There is in the Commonwealth Government a public corporation called the Commonwealth Port Authority. Its functions are governmental and public and it may sue and be sued in its own name. The principal office of the authority is at Saipan, Mariana Islands."

1040

Sections 2204(a) and (b) of 7 CMC limits the liability of the Commonwealth Government and states as follows:

"Exceptions.

The Government is not liable for the following claims:
(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a Commonwealth agency or an employee of the government, whether or not the discretion is abused;
(b) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Section 2133(c) of 2 CMC states as follows:

"Insurance Policies and Sovereign Imnity.
To the extent that any liability of the Commonwealth or of the Authority is covered by any policy of insurance, the government waives its limitation of liability.
(c) Each policy of insurance written covering the authority or its interest shall contain a clause waiving any defense of sovereign immunity which may be raised against the payment of the claim by the carrier up to the limits of the policy."

The issue raised by CPA can be disposed of summarily because the CNMI Legislature has made it clear that the Commonwealth Port Authority is a public corporation which can "sue and be sued in its own name." The inclusion by the legislature of the "sue or be sued" clause in a statute

1041

creating a public corporation engaged in governmental activity is sufficient consent to suit or waiver of immunity from suit. <u>Federal Land Bank of St. Louis v. Priddy</u>, 295 U.S. 229, 55 S. Ct. 705, 79 L.Ed. 1408 (1935) and <u>Keifer & Keifer v. Reconstruction Finance Corp.</u>, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939).

Furthermore, the Defendant-Appellant CPA's argument that since CPA did not purchase an insurance policy it is therefore immune from suit is without merit. Why would the Commonwealth or the CPA ever purchase an insurance policy? Section 2133(c) does not support CPA's contention, it merely states that "[t]o the extent that any liability of the Commonwealth or of the authority is covered by any policy of insurance, the government <u>waives its limitation of liability</u>."

Defendant CPA has cited no Commonwealth statute that grants it immunity from suit, and the trial court is affirmed.

II. <u>The Trial Court Properly Denied Plaintiff's Motion for a new trial.</u>

Plaintiff argues on appeal that the trial court abused its discretion by not questioning the jury as she had requested. Plaintiff alleges that her counsel gave the judge a list of voir dire questions to ask the' veniremen and the following two questions were not asked:

1042

7. Have you or anyone in your family ever hired alien workers from the Philippines?

8. Do you know anyone who has ever had any problems with their alien workers from the Philippines?

Plaintiff argues that if these two questions had been asked of Ms. Castro, the juror in question, she would have revealed that she is the sister of the club owners for other "bar girl" clubs, "Pink Panther" and "Foxfire". She would have revealed also that a complaint was filed by Filipina waitresses against "Foxfire Club" for minimum and overtime wages.

Plaintiff concedes that it is within the trial court's discretion to conduct voir dire. Rosales-Lopez v. United States, 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed. 2d 22 (1981). However, Plaintiff argues that there are limits to such discretion and that it is an abuse of discretion for the district court to refuse to probe the jury adequately for bias or prejudice about material matters on request of counsel. United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979).

As the Appellees correctly point out, the trial court neither approved nor rejected Plaintiff-Appellant's requested voir dire questions. The trial court conducted the following pertinent voir dire:

To all veniremen:

COURT: Have any of you ever been involved in any wage claims or dispute or in a contract with any alien workers, principally from the Philippines?

A. (inaudible).

COURT: Do any of you have any particular feelings about alien workers such as waitresses or maids, whatever, from the Philippines?"

(P.26 of transcript, Jury Selection, July 12, 1985).

The court then requested that Plaintiff's counsel state any challenges for cause. In response, Mr. Fennell stated as follows:

". . . Your Honor, I need a little more information about some of these people before I can give a very good judgment. I think the court -- I have no objection to the way the court's handled it so far. Some of them have not spoken at all and I know the problem local people are very afraid to speak and to say something. I would like to know especially, as to each person's educational level so that I can -- educational level, where they're employed and where their spouse, if any, is employed.

COURT: Okay.

MR. FENNELL: Do you think you can ask those individually?

COURT: Okay. . . . "

(P. 35 of transcript, Jury Selection, July 12, 1985).

The court then questioned Ms. Dolores Guevara Castro, the juror at issue, as follows:

"CLERK: 31, Castro Dolores Guevera.

///

1044

CLERK:  Ms. Castro, if you want to come up here please and take that No. 5 seat.

VENIREMAN DOLORES G. CASTRO
EXAMINATION BY THE COURT

Q    Ms. Castro, have you been able to hear everything we've been talking about?

A    Yes, Your Honor.

Q    Okay, do you know any of the lawyers, parties or witnesses that we've named here?

A    Yes, Your Honor.

Q    Who do you know?

A    Mr. Fennell.

Q    You know Mr. Fennell.  How do you know him?

A    He once represent us.

Q    How long ago was that?

A    Five years ago.

Q    Five years ago, is that the last contact you had with him?

A    Yes.

Q    You understand he's got a duty in this courtroom to represent his client but if you serve as a juror, you've got a duty to render a fair and impartial decision.  Now, if that could -- he represented you five years ago, do you feel that you can still render a fair and impartial decision in this case?

A    Yes, Your Honor.

Q    In other words, you can set aside that relationship you had with Mr. Fennell and still give everybody a fair break?

A    Yes, Your Honor.

Q    Do you know anybody else?

A    I know some but we're not acquainted.

Q    Okay. I guess the question is even though you may have heard these names or maybe went to school somewhere of this sort is whether you can sit in as an impartial juror and render a fair decision for all concern (sic). Can you do that?

A    Yes, Your Honor.

Q    Is your husband -- are you married?

A    No, Your Honor.

Q    Are you employed?

A    Yes.

Q    Where?

A    Public Auditor's Office.

Q    Public what?

A    Public Auditor.

Q    Public Auditor. Okay, what's the extend (sic) of your education?

A    12 grade.

Q    Do you have an alien maid by any chance?
A    No.

Q    Have you ever had a dispute with a maid or any of this sort?

A    No.

Q    Have you ever been to the Seoul Restaurant & Bar down there?

A    No.

Q    Maybe I shouldn't ask that question. Okay, what about my questions as to some of the testimony maybe in Tagalog or Korean, does that create any problem with you or anything of this sort?

A    No, Your Honor.

Q    Are you telling me in (sic) all the lawyers and parties here that you can sit and hear this case without any preconception, without any prejudgment and give all sides a fair hearing?

A    Yes, Your Honor.

COURT:  Okay.  Any challenge for cause for juror No. 5?

MR. WHITE:  Your Honor, I'd like a further opportunity to voir dire about the nature of the relationship with Mr. Fennell.

BY THE COURT:
Q    All right, Ms. Castro, can you tell me just generally the type of case you had?

A    When we had -- when the former governor cut off our budget.

Q    Oh, you were in the public auditor's office then. Okay, I remember the case and you know, sometimes after the case is over the only person you're mad at is your lawyer, you weren't mad at Mr. Fennell, were you?

A    No.

Q    Okay, were you mad at any other, in other words, was the matter resolved to your satisfaction as best as could be done, I assume, right?

A    Yes.

Q    So that didn't involve any claim other than the problem with the governor and the public auditor, is that right?

A    Yes.

COURT:  Any other --  Mr. White, any other information you desire on that?

MR. WHITE:  No, Your Honor.

COURT:  Okay, any for cause on Juror No. 5?  All right, Mr. White, peremptory?

MR. WHITE:  No. 3.

COURT:  All right, Mr. Muna, we're going to excuse you and if you'd go over to courtroom B."

1047

(Transcript, Jury Selection, pp. 45-48)

The court continued with the jury selection and Plaintiff's counsel, Mr. Fennell, continually requested more voir dire for certain jurors.

"VENIREMAN LORENZO DLG MANALO

COURT:  Okay, any for cause for juror No. 3?

MR. FENNELL:  May I request just a little further voir dire, Your Honor.

COURT:  On what subject?

MR. FENNELL:  On how long he was at the Seoul Club, whether he talked to any of the people there, that kind of thing.

BY THE COURT:
Q    Okay.  How long ago was it you were at the Seoul Bar?"

(Transcript, Jury Selection, Id. at 51).

"COURT:    . . . Is there anything further Mr. Fennell on that subject?

MR. FENNELL:  Do you remember who you talk to and how long did he stay at the club.  Part of this case, Your Honor, involves physical characteristics of the club, doors, windows, quarters, bathroom and so an observation of that, although I, you know, I believe Mr. Manalo would be fair but he has seen it and so, in that sense, he has an advantage over the other jurors.

BY THE COURT:
Q    Mr. Manalo, how long were you in the bar?"

(Transcript, Id. at 52 and 53).

"MR. FENNELL: Your Honor, if I may and I apologize to the jury for any delay but I'm worried that his testimony per se may, in other words, there'll be testimony on these issues and . . .

COURT:  Well, I thought that is what you wanted me to ask him.

MR. FENNELL: Well, if he remembers the inside, I think, that that's enough. I mean -- I would suggest that I'm sorry but that's cause to be recuse (sic) because part of it is the conditions of the club.

COURT: Well, I don't understand that yet, Mr. Fennell.

MR. FENNELL: If I may approach the sidebar.

COURT: The complaint is relative to the barracks.

MR. FENNELL: The complaint is also alleging false imprisonment, locking of the doors and knowledge of which doors there are and their conditions in the club may be.

BY THE COURT:
Q  Do you remember much about the interior doors, Mr. Manalo?"

(Transcript, Id. at 54 and 55).

The transcript of the jury selection shows that the trial court asked questions concerning aliens from the Philippines. It is true that the court did not ask the exact questions allegedly proposed to the court in writing by the Plaintiff. However, it appears from the record that Plaintiff's counsel failed to object to the line of questioning conducted by the trial court on the Philippine alien issue and, in fact, stated that he had no objection to the way the court had handled the voir dire up to that point. At that juncture, the trial court had already questioned all veniremen regarding the Philippine alien issue. It is also clear from the record that the trial judge was thoroughly willing to ask the veniremen any further questions proposed by counsel. Plaintiff's counsel quite frequently requested more

voir dire. If Plaintiff's counsel felt that the trial court had inadequately covered the Philippine alien issue, he should have requested additional voir dire on the matter. Additionally, there has been no showing by Plaintiff that Ms. Castro had any knowledge about her siblings' clubs or that she was prejudiced in any way. Ms. Castro indicated many times during jury selection that she could sit as an impartial juror and render a fair decision for all ·concerned. Failure to request additional voir dire, together with a failure to show prejudicial error, clearly prevents the Plaintiff from being allowed a new trial. Jamestown Farmer Elevator, Inc. v. General Mills, Inc., 413 F. Supp. 764, 775 (D.N.D. 1976), aff'd in part and reversed on other grounds, 552 F.2d 1285, 1294 (8th Cir. 1977).

There was no abuse of discretion on the part of the trial court in conducting the jury selection. The denial of Plaintiff's motion for a new trial is AFFIRMED.

III.  The Trial Court Did Not Abuse Its Discretion By Awarding Attorney's Fees.

The U.S. Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed. 2d 40 (1983) considered the issue of awarding attorney's fees to a partially prevailing plaintiff in a federal civil rights action under 42 U.S.C. § 1988. Section 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other

than the United States, a reasonable attorney's fee as part of the costs."

In determining a reasonable attorney's fee, the Supreme Court in _Hensley_ provided the following guidance:

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. ... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

. . .

In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. ... Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

. . .

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified." _Hensley v. Eckerhart_, 461 U.S. at 434-435.

In the case at bar, Section 9244(b) of 4 CMC provides that a plaintiff who prevails in a suit to recover unpaid overtime compensation shall be allowed "a reasonable attorney fee to be paid by the defendant, and the cost of the action."

The court below awarded Plaintiff attorney's fees in the amount of $4,400 and reasoned as follows:

"There is difficulty in arriving at a reasonable fee for plaintiff's attorney because the claim for overtime wages was prosecuted in conjunction with other claims of the plaintiff. Compounding this fact is that the trial was by a jury demanded by another party (Commonwealth Ports Authority) which necessarily involved the plaintiff in trial longer than if it were only a court trial.

Plaintiff's counsel did not segregate or attempt to segregate the time spent on the wage claim.

Admittedly, this was probably difficult to do but not an insurmountable task. The billing of plaintiff's counsel (attached to his claim) does not provide much guidance for the court because of the non-segregation. At argument, counsel could only estimate that 60 to 70% of his time was spent on the wage claim. This would represent a fee (based on $110 per hour which apparently defendant's counsel concedes is a fair hourly fee in this case) of between $12,700 to $15,800.

In considering the award of a reasonable attorney fee the usual starting point is to determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

///

1052

That the degree of success is a crucial factor in setting an award of fees is now settled."

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L. Ed. 2d 40 (1983).

"Since the award of attorney fees must be determined on the facts of each case, the court now turns to the claim of the plaintiff for overtime wages, the prosecution of same and the result obtained.

Plaintiff's claim for overtime wages is set forth in the first cause of action of the complaint. There are five other causes of action. Plaintiff amended her complaint once because a party was added but this had no effect on her wage claim. Some of these other claims were disposed of in pre-trial motions. Indeed, much of the pre-trial manuevering including motions, discovery and the like did not involve the first cause of action. Admittedly, plaintiff had to depose her fellow employees to substantiate her wage claim, but the motions such as for summary judgment(s), to add a party, to strike the amended complaint, and for separate trials were all concerned with the other causes of action.

The jury returned a verdict of $1,798 for the unpaid overtime wages. The court, pursuant to 4 CMC §9243 doubled that for liquidated damages. Essentially, then the court is looking at a rather straightforward overtime wage claim which resulted in a moderate recovery.

One exception must be made to the observation that this was a "run of the mill" wage claim and that was the necessity of plaintiff's counsel to go to Manila to discover (from plaintiff's co-workers) the true story about the records of the employer, Lee Chang Soo and Seoul Restaurant & Bar. The records were discredited and the Manila deposition clearly enabled the plaintiff to prevail on her wage claim. The defendants caused the expense and then forced plaintiff to trial to demonstrate that she was entitled to overtime wages.

The court finds that this is one of those unique and infrequent cases where counsel's

travel and hotel expenses are recoverable to prosecute this particular claim.

In light of all of the factors involved the court finds that a reasonable amount of hours spent on the wage claim of the plaintiff is 40 hours and will allow an attorney fee of $4,400.00."

Commonwealth Trial Court, Order Taxing Costs and Awarding Fees Against Defendants Lee Chang Soo and Seoul Restaurant & Bar, issued September 26, 1985, pp. 3-5.

It is difficult to determine whether the court below viewed the wage claim as unrelated to the other claims raised by Plaintiff or as a related claim which involved a common core of facts. It appears from Plaintiff's counsel's billing of attorney fees, his oral argument, and his brief, that he viewed Plaintiff's claims as arising from a common nucleus of facts. The trial court, at the hearing, disagreed with Plaintiff's counsel that he could not segregate the time spent on the wage claim and even instructed him to segregate the hours. Plaintiff's counsel refused and failed to do so and the court made mention of this in its order awarding attorney fees.

Thus, the trial court, without the assistance of Plaintiff's counsel, was left with the entire burden of determining a reasonable attorney's fee. Initially, it appears from the trial court's order that there was an attempt to segregate some of the hours which were not spent on the wage claim. Then it appears that the court treated the remainder of the hours as if they involved related claims and focused on the degree of success obtained by the plaintiff in relation to the

1054

remaining hours reasonably expended on the related litigation. The trial court, under the circumstances, awarded reasonable attorney's fees and took into consideration all the factors mentioned in Hensley.

Additionally, the Hensley court at footnote 12, stated:

> "We recognize that there is no certain method of determining when claims are 'related' or 'unrelated.' Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures. See Nadeau v. Helgemoe, 581 F.2d 275, 279 (CA1. 1978) ('As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.')"

There was no abuse of discretion by the trial court. The award of attorney's fees is AFFIRMED.

IV. COSTS

Defendants Soo and Seoul Restaurant & Bar appeal the following costs awarded to Plaintiff:

|     |                            |          |
| --- | -------------------------- | -------- |
| 1.  | Witness fees (deposition)  | $ 95.00  |
| 2.  | Translation expense        | 55.00    |
| 3.  | Deposition expense         | 301.00   |
| 4.  | Deposition expense         | 142.75   |
| 5.  | Deposition expense         | 403.00   |
| 6.  | Travel                     | 765.00   |
| 7.  | Hotel                      | 770.51   |

Defendants argue that the $95 witness fees, the $55 translation expense, and the $301 deposition expense allowed by the court were for depositions that were never used by the Plaintiff at trial. These depositions were taken shortly after the complaint was filed. The witnesses deposed, however, were called to testify at trial by the above Defendants.

The above Defendants further maintain that the $403 deposition expense must be reduced by one-third since only two of the three depositions were used by Plaintiff at trial.

In determining whether to tax as costs expenses for depositions that were not used at trial, the court must determine whether the "deposition reasonably seemed necessary at the time it was taken." 10 Wright & Miller, Federal Practice and Proc. § 2676 at p.341; see 6 Moore's Federal Practice § 54.77[4].

The trial court at the hearing stated:

"  .  .  .  I'm going to accept the representation of Mr. Fennell that they were all waitresses and they took them shortly after the case was filed to find out what the lawsuit was about."

It cannot be said that the trial court abused its discretion and this court AFFIRMS the award of costs.

Defendants also argue that the sum of $765 for Plaintiff's counsel's travel to the Philippines and the sum of $770.51 for expenses at the hotel there should not have been allowed as taxable costs because (1) they are not proper taxable costs and (2) plaintiff's counsel failed to present an itemized billing.

1056

Usually, these costs would not have been allowed. However, the trial court allowed these expenses as costs due to the unique circumstances of this case, i.e., that the Plaintiff had to go to Manila to discover the true story about the records of employer Soo and Seoul Restaurant & Bar.

As far as an itemized bill, it appears that the trial court had before it only an American Express bill for the hotel and an American Express bill for the flight, together with the credit card form used by Continental Air Lines showing a route of SAIPAN/GUAM/MANILA/GUAM/SAIPAN. Plaintiff's counsel, however, stated in an affidavit attached to his costs that these were his true and correct costs and that such costs were necessarily incurred in this matter. Defendants' counsel replies in his brief that he was on the same flight with Plaintiff's counsel to and from Manila and that his ticket cost only $396. However, it does not appear on the record that Defendants' counsel advised the trial court of the difference in the price of his airline ticket.

This Court finds no abuse of discretion in this award of costs and AFFIRMS the trial court's determination.

Finally, Defendants Soo and Seoul Restaurant & Bar maintain that the deposition fee of $142.75 should be reduced by $49.50 since Francisco Babauta, one of the security guards at the airport, was not called as a witness at trial and his deposition was never used. In the alternative, Defendants Soo and Seoul Restaurant & Bar argue that this $49.50 expense

1057

should be apportioned among all Defendants since this deposition dealt only with the "airport incident."

This $49.50 deposition expense is allowed as a cost of suit because it was reasonably necessary to Plaintiff's case; however, this amount is apportioned among all Defendants liable for the "airport incident": Air Nauru, CPA, and Soo.

The decision of the trial court is AFFIRMED in all respects save for remand to apportion the $49.50 expense of deposition between defendants Air Nauru, Commonwealth Ports Authority and Soo.

ALFRED LAURETA, District Judge

CRISTOBAL C. DUENAS, District Judge

CONSUELO B. MARSHALL, District Judge

[1]/The $3000 was negated by Continental Airlines earlier settlement of $7,500 (order of September 26, 1985).